Mark L. Williams (*pro hac vice*)
Nicholas P. Heinke (*pro hac vice*)
williamsml@sec.gov
heinken@sec.gov
Counsel for the Plaintiff
Securities and Exchange Commission
Denver Regional Office
1961 Stout Street, 17th Floor
Denver, Colorado 80294

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>- against -<br><br><br>ROLAND M. MATHYS<br><br>         Defendant. | 18-CV-00701-JGK<br><br><br><br>ECF CASE |

**AMENDED COMPLAINT**

  Plaintiff United States Securities and Exchange Commission (the "SEC"), for its Amended Complaint against Defendant Roland M. Mathys, alleges as follows:

### I. SUMMARY OF THE ACTION

  1. This is an insider trading case involving trading by Mathys in call option contracts ("call options") of Bioverativ, Inc. ("Bioverativ") just prior to the January 22, 2018 announcement (the "Announcement") that Bioverativ had entered into an agreement to be acquired for $105 per share by French *société anonyme* Sanofi ("Sanofi"), a global life

sciences company. At the time of his trades, which netted him millions of dollars in profits, Mathys was in possession of material non-public information regarding Sanofi's tender offer for the acquisition of Bioverativ.

2. Prior to the Announcement, in early January 2018, Mathys' friend and former co-worker (the "Friend") provided him with material non-public information about the Sanofi/Bioverativ acquisition, which the Friend had obtained from his father, a senior Sanofi executive (the "Sanofi Insider"). Specifically, the Sanofi Insider relayed material non-public information to the Friend, his son, that the Sanofi Insider obtained at a Sanofi executive committee meeting regarding Sanofi's impending acquisition of Bioverativ, and spoke of how busy he expected to be in the coming weeks as a result. The Friend passed this material non-public information along to Mathys, who knew or had reason to know that the information came from the Sanofi Insider.

3. After receiving this material non-public information, between January 12 and 19, 2018, the last five trading days before the Announcement, Mathys purchased more than 1,600 Bioverativ call options with strike prices between $65 and $75 that were set to expire on February 16, 2018. Mathys' pre-Announcement purchases of short-term Bioverativ call options represented a significant share of all reported trades in Bioverativ call options during the relevant period, including all or nearly all of the trades in particular series of Bioverativ options on several days. Further, at the time of Mathys' purchases, Bioverativ had not closed above $65 per share at any point since it began trading on the NASDAQ market in January 2017. This meant that the call options were "out of the money": unless Bioverativ's stock

price rose to above $65 by mid-February 2018, all of Mathys' call options would expire worthless.

4.  As a result of the January 22, 2018 Announcement, Bioverativ's share price did, in fact, increase above $75 per share. Specifically, on Monday, January 22, 2018, Bioverativ shares opened at $104.21, reached a high of $104.30 for the day, and closed at $103.79 per share, a 61.9% increase over its January 19 closing price.

5.  Mathys began selling his call options on the day of the Announcement. In all, Mathys' illicit trading while in possession of material non-public information generated profits of approximately $4.9 million in just 10 days on an investment of less than $170,000.

6.  By engaging in the conduct described in this Amended Complaint, Mathys violated, and unless restrained and enjoined will continue to violate, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3(a) thereunder [17 CFR § 240.14e–3(a)].

## II.     NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7.  The SEC brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The SEC seeks a permanent injunction against Mathys, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Amended Complaint, disgorgement of all ill-gotten gains from the unlawful insider trading activity set forth in this Amended Complaint, together with prejudgment interest, and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]. The SEC seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## III.     JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa]. Mathys has directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Amended Complaint.

9.     Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the Southern District of New York and elsewhere, and were affected, directly or indirectly, by making use of the means or instruments or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange. During the time of the conduct at issue, the main office of the bank through which Mathys' trades were cleared was located in New York, New York. Further, Bioverativ's common stock is traded on the NASDAQ exchange, which is located in New York, New York.

10.     Venue also lies in this Court pursuant to 28 U.S.C. § 1391(c)(3) because Mathys is not a resident of the United States.

11.     Unless restrained and enjoined, Mathys will continue to engage in the acts, practices, transactions, and courses of business alleged in this Amended Complaint, or in acts, practices, transactions, and courses of business of similar purpose and object.

## IV.     DEFENDANT

12.     **Roland M. Mathys**, age 31, resides in or near Zurich, Switzerland. He is currently employed by a Swedish-Swiss multinational corporation headquartered in Zurich. Prior to that, he worked at a German consulting firm, in its Zurich office, along with the Friend. Mathys is close personal friends with the Friend and is also friends with the Sanofi Insider, with whom he has socialized on numerous occasions and who previously offered to help him find employment, including at Sanofi.

## V.     FACTS

A.     **Sanofi and Bioverativ Begin Negotiating a Tender Offer**

13.     By late 2017, Sanofi had taken substantial steps to commence a tender offer for the acquisition of Bioverativ.

14.     In or around early December 2017, Sanofi and Bioverativ executed a confidentiality agreement and commenced negotiations for a potential acquisition.

15.     On or about January 4, 2018, Sanofi offered to purchase all Bioverativ's outstanding shares for $105 per share, subject to due diligence.

16.     On or about January 5, 2018, Sanofi and Bioverativ executed an agreement that provided Sanofi with the exclusive right to negotiate the potential acquisition of all of the outstanding shares of Bioverativ at the agreed price of $105 per share, in cash, until January 26, 2018.

B. **The Sanofi Insider Discloses Material Non-Public Information to the Friend**

17.     On or around January 5 and 6, 2018, the Sanofi Insider attended a Sanofi executive committee meeting in California. At that meeting, the Sanofi Insider learned material non-public information regarding the Sanofi tender offer for Bioverativ's shares, including that the companies had a deal in principle and that the deal was moving quickly and would be announced in the coming few weeks. The Sanofi Insider knew or had reason to know that this information was material and non-public.

18.     On or around January 8 or 9, 2018, the Sanofi Insider spoke to his son, the Friend, via a FaceTime call. In explaining that he recently returned from the United States, the Sanofi Insider relayed material non-public information to the Friend that the Sanofi Insider obtained at the Sanofi executive committee meeting regarding Sanofi's impending acquisition of Bioverativ, and spoke of how busy he expected to be in the coming weeks as a result.

C. **The Friend Discloses Material Non-Public Information to Mathys, Who then Engages in Significant Purchases of Bioverativ Stock**

19.     Mathys and the Friend are close personal friends and were previously employed at the same company. Through the Friend, Mathys had met the Sanofi Insider on numerous occasions. Mathys knew the Sanofi Insider was an officer and employee of Sanofi. In fact, Mathys had previously requested that the Sanofi Insider use his professional connections to assist him in gaining employment, which the Sanofi Insider did.

20.     On or about January 9 or 10, 2018, after obtaining material non-public information about Sanofi's impending acquisition of Bioverativ from the Sanofi Insider, the Friend spoke with Mathys via a FaceTime call. The Friend relayed to Mathys the material

non-public information concerning Sanofi's tender offer for the acquisition of Bioverativ that the Friend received from the Sanofi Insider.

21. At the time of this conversation, the Sanofi/Bioverativ acquisition had not yet been announced, and Mathys knew or had reason to know the information he was given by the Friend was confidential and non-public. Mathys also knew or had reason to know that the Friend had received the information directly from the Sanofi Insider.

22. The information Mathys received from the Friend was material. In fact, it was of such importance that Mathys almost immediately began aggressively purchasing call options in Bioverativ so he could profit from the impending public announcement. From his aggressive trades, Mathys turned less than $170,000 into nearly $5 million in just 10 days.

23. Call options, like the ones purchased by Mathys, give a buyer the right, but not the obligation, to purchase a company's stock at a set price (the "strike price") for a certain period of time (through "expiration"). In general, one buys a call option when one expects the stock price to rise, or sells a call option when one expects the stock price to fall. If at the time of purchase the strike price for the call option is above the price at which the stock is then trading, the call option is "out of the money" because it would be unprofitable to exercise the call and pay more for the stock than if it were purchased on the stock market.

24. From on or about January 12, 2018 through on or about January 19, 2018, Mathys purchased 1,607 Bioverativ call options, all of which were "out-of-the-money" at the time of purchase, having strike prices between $65 and $75 per share. All of the purchased options were set to expire on February 16, 2018.

25. Specifically, Mathys purchased the following:

| Date | No. of Call Option Contracts Purchased | Strike Price | Average Premium Paid | Percentage of the Day's Total Trading in Series By Defendant (Source: Bloomberg) |
|---|---|---|---|---|
| 1/12/2018 | 342 | $65 | $2.44 | 75% |
| 1/12/2018 | 370 | $70 | $.79 | 82% |
| 1/12/2018 | 100 | $75 | $.59 | 96% |
| 1/16/2018 | 100 | $75 | $.80 | 97% |
| 1/17/2018 | 20 | $65 | $2.29 | 32.3% |
| 1/17/2018 | 100 | $75 | $.50 | 95% |
| 1/18/2018 | 300 | $75 | $.59 | 100% |
| 1/19/2018 | 275 | $75 | $.56 | 50% |
| TOTAL | 1,607 | | | |

26. Mathys' purchases cost a total of approximately $169,151.

27. Mathys' purchases made up a significant volume of all reported options trades on those days, and on several days constituted all or nearly all of the trades in the particular series of options contracts in which Mathys traded.

28. Bioverativ had not closed at or above $65 per share at any point since it began trading on the NASDAQ market in January 2017. For Mathys' $75 call options to be profitable, the Bioverativ share price had to increase by more than $10 per share above its all-time high—more than a 15% increase—by February 16, 2018.

29. All of Mathys' purchases of Bioverativ options as detailed above were made after Sanofi and Bioverativ had taken substantial steps toward consummating an agreement pursuant to a tender offer.

8

30. Mathys' purchases of Bioverativ call options were unusual trades for Mathys. On information and belief, before his January 2018 purchases of Bioverativ call options, Mathys had never previously traded in Bioverativ securities.

**D.    The Announcement and Mathys' Sales**

31. Before the NASDAQ market open on January 22, 2018, Sanofi and Bioverativ announced their agreement that Sanofi would acquire all of the outstanding stock of Bioverativ for $105 per share. As a result of the Announcement, Bioverativ's share price increased substantially. On Monday, January 22, 2018, Bioverativ shares opened at $104.21, reached a high of $104.30 for the day, and closed at $103.79 per share, a more than 61.9% increase over its January 19 closing price of approximately $64 per share.

32. On or about January 22, 2018, Mathys sold all of the call options with a strike price of $65 and all of the call options with a strike price of $70. From these sales, Mathys received approximately $2,636,820 in proceeds.

33. On or about January 23, 2018, Mathys sold an additional 75 call options with a strike price of $75, for additional proceeds of approximately $212,250.

34. The bulk of the proceeds from the above sales were transferred to Mathys' account in Switzerland.

35. On January 26, 2018, the Court entered [Doc. #1] a temporary restraining order, and on February 9, 2018, the Court entered [Doc. # 14] a preliminary injunction, freezing the proceeds of Mathys' sales and certain other assets.

36. On or about January 26, 2018, Mathys sold 250 call option contracts with a strike price of $75 for an additional $700,000 in proceeds, but these proceeds were held in the United States subject to this Court's asset freeze order.

37. As of February 9, 2018, Mathys retained approximately 550 Bioverativ call option contracts with a strike price of $75. Pursuant to this Court's order [Doc. # 16], these options were exercised and resulted in proceeds of approximately $1,568,732.47, which were also held in the United States subject to the Court's asset freeze order.

38. All or substantially all of Mathys' illicit trading proceeds have been frozen in the United States or Switzerland.

E.   **Mathys' Post-Trading Conduct**

   a.   **Mathys Makes False Statements to His Banker**

39. On or about January 26, 2018, Mathys met with an employee of the bank at which Mathys had purchased and sold the Bioverativ call options. During this meeting, Mathys made untruthful statements regarding the reasons for his trades.

40. Specifically, Mathys claimed to be surprised by the success of his trades and claimed that he had no dealings with anyone at Bioverativ or Sanofi and had no information about the Sanofi/Bioverativ acquisition at the time of his trading.

41. These statements were not truthful, since, among other things, Mathys had the material non-public information regarding the Sanofi/Bioverativ acquisition described above at the time he purchased the Bioverativ call options. In fact, Mathys was specifically alerted to the impending acquisition just before he began aggressively purchasing the Bioverativ call options that went from potentially worthless to worth millions of dollars following the

announcement of Sanofi's tender offer for the acquisition of Bioverativ. Further, Mathys omitted that he had a personal relationship with the Sanofi Insider and the Friend.

### b. Mathys Does Not Deny His Misconduct

42. As noted above, on January 26, 2018, the Court entered [Doc. #1] a temporary restraining order freezing the proceeds of Mathys' sales and certain other assets.

43. On or about the week of January 29, 2018, Mathys and the Friend met after work at Mathys' apartment. Mathys told the Friend that he was under investigation for insider trading in the shares of Bioverativ. Mathys did not deny that he had purchased Bioverativ call options based on the information that the Friend had provided him, and did not otherwise deny that he had engaged in misconduct. Mathys further instructed the Friend not to communicate with him about the issue over the phone or via text or other messaging service.

44. Later the week of January 29, 2018, Mathys and the Friend again met in person. Mathys told the Friend that he believed he could not successfully contest the SEC's allegations. Mathys did not deny the truth of the SEC's allegations nor did he offer any alternative reasons for his trades.

45. On or around March 24, 2018, the Friend and Mathys met at Mathys' apartment. This time the Friend told Mathys that not only was Mathys in trouble for his trades, but that the Friend and his father, the Sanofi Insider, could also be in trouble because of Mathys' trading in Bioverativ. Mathys did not deny the SEC's allegations, and did not offer alternative reasons for his trades, but instead apologized to the Friend for creating trouble for the Friend and the Sanofi Insider.

## FIRST CLAIM FOR RELIEF

### Violations of Exchange Act Section 14(e) and Rule 14e-3 Thereunder

46. Paragraphs 1 through 45 are re-alleged and incorporated by reference.

47. By virtue of the foregoing, Mathys, in connection with a tender offer, directly or indirectly purchased or caused to be purchased securities or options to obtain securities while in possession of material information related to a tender offer, which information Mathys knew or had reason to know was non-public and which Mathys knew or had reason to know had been acquired directly or indirectly from Sanofi or any officer director, partner, employee or any other person acting on behalf of Sanofi before such information and its source were publicly disclosed.

48. By virtue of the foregoing, Mathys, directly or indirectly, violated, and unless enjoined, will again violate, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3(a) thereunder [17 CFR § 240.14e–3(a)].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that this Court continue its Preliminary Injunction Order [Doc. # 14] against Mathys: (i) freezing assets; (ii) requiring repatriation of assets; and (iii) preventing document alteration or destruction.

Further, the SEC respectfully requests that the Court enter a final judgment:

### I.

Permanently restraining and enjoining Mathys, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, and each of them,

from, directly or indirectly, violating Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3(a) thereunder [17 C.F.R. § 240.14e(3)(a)];

## II.

Ordering Mathys to disgorge all ill-gotten gains derived from the activities set forth in this Amended Complaint, together with prejudgment interest thereon;

## III.

Ordering Mathys to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

## IV.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the SEC demands trial by jury in this action of all issues so triable.

Dated: June 13, 2019

                                      Respectfully submitted,

                                      *s/ Nicholas P. Heinke*
                                      Mark L. Williams (NY Bar No. 4796611)
                                      Senior Trial Counsel
                                      Nicholas P. Heinke (*pro hac vice*)
                                      Senior Trial Counsel
                                      Attorneys for Plaintiff
                                      SECURITIES AND EXCHANGE
                                      COMMISSION
                                      1961 Stout Street, 17th Floor
                                      Denver, Colorado 80294
                                      (303) 844-1000
                                      williamsml@sec.gov
                                      heinken@sec.gov